IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Textileather Corporation, | Case No. 3:08 CV 171 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| GenCorp Inc., | |
| Defendant. | |

### INTRODUCTION

This matter is before the Court on Defendant GenCorp Inc.'s ("GenCorp") Motion for Attorney's Fees and Associated Costs and Expenses (Doc No. 102) and Bill of Costs (Doc. No. 101). Plaintiff Textileather Corporation ("Textileather") filed an Opposition to the Motion for Attorney's Fees (Doc. No. 108) and GenCorp replied (Doc. No. 111). Textileather also filed an Objection to the Bill of Costs (Doc. No. 109) and GenCorp replied (Doc. No. 110). A hearing on the Motion for Attorney's Fees and Associated Costs was held on February 28, 2011 (Non-Document Entry of 2/28/11).

### BACKGROUND

Textileather filed this lawsuit seeking to recover from GenCorp expenses incurred by Textileather in attempting to close hazardous waste ("CRCRA") units at a manufacturing facility in Toledo, Ohio (Doc. No. 1). The primary claim by Textileather was that GenCorp breached Article 9 of an Asset Purchase Agreement ("APA") dated May 1990. The parties filed cross Motions for Summary Judgment (Doc. Nos. 72, 75, 85–86). This Court found in favor of GenCorp, holding that

GenCorp was not required to indemnify Textileather for costs related to the closing of CRCRA units. GenCorp now seeks an award of fees and costs as the prevailing party based upon a fee-shifting provision in the APA.

**DISCUSSION**

**Legal Standard**

The APA is governed by Ohio law, which follows the "American Rule" with regard to awarding attorney fees. *Nottingdale Homeowners' Ass'n, Inc. v. Darby*, 33 Ohio St. 3d 32, 33 (1987). Litigants are usually responsible for their own attorney fees absent a statute, contract or bad faith by the unsuccessful litigant. *Id.* at 33–34. GenCorp argues that the APA (contract) allows GenCorp to recover its attorney fees. GenCorp relies on Section 11.14 of the APA,[1] which provides:

> Seller [Gencorp] will pay to Purchaser [Textileather] any actual damages (including without limitation, reasonable costs and expenses incurred by Purchaser [Textileather] incident to any of the matters indemnified against in Section 11.13) which Purchaser [Textileather] incurs as the result of Seller's [Gencorp's] breach of any of its representations, warranties or covenants hereunder. If Purchaser [Textileather] institutes any legal action against Seller [Gencorp] under this Section 11.14, the prevailing party will receive all reasonable costs and expenses, including reasonable attorney's fees, incurred by such party in connection with such action, other provisions hereof notwithstanding.

The parties agree that the Court's initial responsibility is to interpret this provision. Contract interpretation is a matter of law when the terms are clear and unambiguous. *Long Beach Ass'n, Inc. v. Jones*, 82 Ohio St. 3d 574, 576 (1998); *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993). The Court's role is to determine the intent of the parties as expressed in the language of the agreement. *City of St. Marys v. Auglaize Cty. Bd. Of Comm'rs.*, 115 Ohio St. 3d 387, 390 (2007).

---

[1] The term "Article" refers to general headings used in the APA (e.g., "Article 11") while the term "Section" refers to specific paragraphs of the Articles (e.g., "Section 11.14").

Where the contract terms are clear and unambiguous, this Court should apply the plain meaning of the agreement. *Id.* The language is ambiguous when its meaning cannot be ascertained from the four corners of the document or its terms are susceptible to two or more reasonable interpretations. *Potti v. Duramed Pharms., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991).

**Dueling Interpretations of Section 11.14**

This Court must examine Section 11.14 as it relates to other sections of the APA. *See Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 797 (6th Cir. 2003) ("It is well settled that contracts must be read as a whole, and they must be interpreted in such a manner as to give effect to every provision."). Articles 3 and 4 of the APA cover "representations and warranties" of the seller and purchaser, respectively; and Article 5 pertains to "covenants of the seller pending the closing."

Textileather claims that the fee-shifting provision in Section 11.14 is limited to legal actions brought "under this Section 11.14," and that Textileather did not institute this action under Section 11.14, but rather, proceeded under Article 9 of the APA. Indeed, Section 11.14 is not mentioned in the Complaint or the summary judgment pleadings (except in passing). Textileather concedes that Article 11 does apply to certain other articles of the APA, such as Articles 3–5, but argues it does not apply to Article 9 because Article 9 does not turn on matters related to promises made prior to the closing. Instead, it details responsibilities for environmental and other post-closing matters, including "retained liabilities" for Textileather.

Not surprisingly, GenCorp argues for a broader reading of Section 11.14 which would include actions brought under Article 9. It argues that the fee-shifting provision unambiguously encompasses a seller's breach of *any* "representations, warranties or covenants" provided in the APA, noting that Article 9 clearly is captioned "Additional Covenants." Textileather responds that the caption

3

"Additional Covenants" is not determinative of whether that section falls within the "covenants" mentioned in Section 11.14, pointing to Section 11.4:

> 11.4. <u>Captions</u>. The captions in this Agreement are inserted for convenience of reference only and in no way define, describe or limit the scope of intent of this Agreement or any of the provisions hereof.

**What Does It All Mean**

Succinctly stated, then, the issue before this Court is whether the plain meaning of the APA allows GenCorp to recover its attorney fees under Section 11.14 where Textileather sought damages against GenCorp under Article 9 for breach of a "covenant."

Section 11.14 is specifically dependent upon Section 11.13 which states:

> 11.13. <u>Seller Indemnity</u>. To the extent not otherwise provided herein, Seller agrees to defend and indemnify Purchaser from and against all debts, liabilities and obligations owed to third persons arising out of or in any way relating to the operation of the Business accruing prior to the Closing Date or from events occurring prior to the Closing with respect to the ownership, management, operation and maintenance of the Business which are not Assumed Liabilities.

In plain English, Section 11.13 provides for GenCorp to indemnify Textileather from actions for "debts, liabilities and obligations owed to third persons . . ." relating to events occurring prior to closing. Section 11.14 then ties into that responsibility by providing for payment of costs and expenses "to any of the matters indemnified against in Section 11.13."

A mirror image of Textileather's indemnity and liability for damages is contained in Sections 11.15–16, and the subsequent Sections 11.17–18 set forth procedures regarding indemnities and limitations. While GenCorp's indemnity in Section 11.13 is limited to matters "prior to the Closing," Textileather's indemnity is limited to matters "subsequent to the Closing" (compare Section 11.13 to Section 11.15).

4

These sections under Article 11, when read together, clearly indicate some limitation to the indemnity provisions. Otherwise, a simple sentence that each side would indemnify the other side for all breaches under the APA is all that would be necessary.

GenCorp takes the position that Section 11.14 is stand-alone, unhinged to Section 11.13. It further argues that use of the word "any" in Section 11.14 reflects an intent to be as broad as possible. Textileather argues the word "any" does not change the scope of 11.14, but rather refers to the breach of representations and warranties that trigger an action under 11.14.

Clearly there is some relationship between Sections 11.13 and 11.14, not just because one follows the other, but also because Section 11.14 specifically refers to Section 11.13. On the other hand, Section 11.14 does not expressly limit its application to Section 11.13. In short, it simply is not clear what the parties intended by way of the scope of the fee-shifting provision in Section 11.14. This Court cannot, within the confines of the APA, determine if the instant lawsuit -- which undisputedly covers matters subsequent to the closing and therefore falling outside Section 11.13 -- was intended to cover the type of claim brought in the instant lawsuit under Article 9.

## CONCLUSION

This Court must therefore deny the Motion for Attorney's Fees and Associated Costs (Doc. No. 102). This means, contrary to the suggestion by Textileather at the hearing, further proceedings are necessary. The interpretation of the APA is an issue of fact to be determined by looking to testimony and matters outside the four corners of the APA. *See Savedoff v. Access Group, Inc.*, 524 F.3d 754, 769–70 (6th Cir. 2008); *see also Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 684–85 (6th Cir. 2000). A Phone Status Conference to discuss further scheduling is set for **Friday, April 8, 2011 at 3:00 p.m.** The Court will initiate the call.

5

Finally, GenCorp is entitled to its costs (Doc. No. 101) and the parties have stipulated that those recoverable costs total $36,000.

IT IS SO ORDERED.

                                                  s/ *Jack Zouhary*
                                               JACK ZOUHARY
                                               U. S. DISTRICT JUDGE

                                               March 31, 2011